UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-200-MOC

| | |
|---|---|
| REBECCA SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **ORDER** |
| KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security, | ) ) ) ) ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 7, 10). Plaintiff Rebecca Smith brought this action, pursuant to 42 U.S.C. § 405(g), for review of Defendant's final decision that Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Administrative History**

On March 5, 2019, Plaintiff protectively filed a claim for a period of disability and disability insurance benefits under Title II of the Act, alleging disability since December 31, 2014 (Tr. 20, 174). Plaintiff's claim was denied initially and on reconsideration. (Tr. 20, 107, 112). The ALJ held a telephone hearing on November 18, 2020, at which Plaintiff, an attorney representative, and an impartial vocational expert appeared. (Tr. 20, 38). On January 6, 2021, the ALJ decided that Plaintiff was not disabled within the meaning of the Act from December 31, 2014, through December 31, 2019, Plaintiff's date last insured. (Tr. 31). On July 7, 2021, the

Appeals Council denied Plaintiff's request for review, making the ALJ's decision Defendant's final decision. (Tr. 1).

## II. Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

For the purposes of Title II of the Act, "disability" means "the inability to do any substantial gainful activity [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

The ALJ followed the five-step sequential evaluation in the analysis of Plaintiff's alleged disability. See 20 C.F.R. § 416.920(a). In particular, the ALJ found at step one that Plaintiff had not engaged in SGA from December 31, 2014, through December 31, 2019, and at step two that Plaintiff had the following severe impairments: bilateral knee replacement, epilepsy, migraines, and attention deficit hyperactivity disorder (ADHD) (Tr. 23). The ALJ found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (id.).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform a reduced range of medium work, as defined in 20 C.F.R. § 404.1567(c). (Tr. 25). Specifically:

> the claimant can never climb ladders, ropes, or scaffolds; but can occasionally climb ramps and stairs. In addition, she can occasionally balance, kneel, crouch,

and crawl. The claimant cannot work around hazards, unprotected heights, and dangerous moving machinery, excluding conveyor belts. In addition, the claimant must avoid concentrated exposure to vibration. The claimant can perform simple, routine, repetitive work at a reasoning level up to and including three on a sustained basis eight hours a day, five days a week. Further, the claimant can tolerate occasional changes in the work setting and engage in occasional decision making.

(Id.).

The ALJ found at step four that Plaintiff was unable to perform any past relevant work and at step five that jobs existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 30). Thus, the ALJ decided that Plaintiff was not disabled within the meaning of the Act from December 31, 2014, through December 31, 2019. (Tr. 31).

## V.     Discussion

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ improperly considered the relevant functions in assessing Plaintiff's RFC; (2) the ALJ improperly made findings regarding Plaintiff's abilities to lift, carry, sit, stand, and walk; and (3) the ALJ's decision was inconsistent regarding the limitation for Plaintiff to do medium work.

**A. The ALJ properly considered the relevant functions in assessing Plaintiff's RFC.**

Plaintiff first argues that remand is warranted because "the ALJ failed to perform a function-by-function assessment." (Pl. Br. 4). Plaintiff's argument is without merit. First, the Fourth Circuit has "declined . . . to adopt a 'per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis,' noting that such rule 'would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Owen v. Colvin, No. 1:15-cv-00115-MOC, 2016 WL 4373702, at *4 (W.D.N.C. Aug. 15, 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). Plaintiff bears the burden of proving that an error is harmful. See Shinseki v. Sanders, 556 U.S. 396, 409–10 (2009) (stating that the party attacking the agency determination normally bears the burden of showing that an error was

-5-

Case 1:21-cv-00200-MOC   Document 13   Filed 05/06/22   Page 5 of 12

harmful); Smith v. Colvin, No. 1:12-cv-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (stating that error is harmless where remand would not lead to a different result) (citations omitted).

Here, Plaintiff has not identified a relevant and contested function that the ALJ did not discuss, or an alleged limitation that the ALJ rejected, that might make the absence of an explicit function-by-function analysis harmful to her. (Pl. Br. 3–6); see also Hendrickson v. Berryhill, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) ("A claimant has the burden to prove the extent of h[er] functional limitations; it is not the ALJ's burden to prove a lack of limitations.") (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)); McAnally v. Astrue, 241 Fed. Appx. 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate that . . . the claimant has shown no error because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitation.").

Second, in any event, the ALJ provided a function-by-function analysis or "properly considered the relevant functions." Owen, 2016 WL 4373702, at *4. For example, regarding Plaintiff's right and left knee impairments, the ALJ noted that Plaintiff was doing well post-operatively, participated in physical therapy, and experienced improvement in pain and mobility. (Tr. 27, 326, 352, 354, 361). Further, Plaintiff reported in early 2018 that her knees were feeling great. (Tr. 27, 525). She was able to bike and hike, she was tubing, she was doing everything that she wanted to do; she felt dramatically better than before the operation, and she was extraordinarily pleased with the result. (Id.). Imaging showed well-seated bilateral total knee arthroplasties with no evidence of any radiographic complications. (Id.). As the ALJ explained, although exams at times showed antalgic gait, knee effusion, tenderness, and knee malalignment,

exams generally showed normal gait, normal knee alignment, normal range of motion, knee stability, normal muscle tone and strength, no edema or cyanosis, and intact neurological functioning. (Tr. 27, 326, 329, 334, 463, 492, 500, 529, 677, 746, 814, 822, 876).

Regarding Plaintiff's headaches and seizures, the ALJ noted that Plaintiff reported in 2016 continued migraines with some aura sensations but no significant seizure activity. (Tr. 27, 466). Plaintiff explained that medication was controlling her symptoms. (Tr. 27, 462, 464, 468, 488, 495, 697); see also Burr v. Berryhill, No. 5:17-cv-169-DCK, 2018 WL 3069177, at *5 (W.D.N.C. June 21, 2018) ("'If a symptom can be reasonably controlled by medication or treatment, it is not disabling.'") (quoting Gross v. Heckler, 785 F.3d 1163, 1166 (4th Cir. 1986)).

In August 2018, Plaintiff had a seizure for the first time in two years; the emergency-room assessment states that it was unknown why Plaintiff had the seizure, that her headaches improved with medications, and that she declined an ER dose of Imitrex. (Tr. 27, 812). In late 2018 and early 2019, Plaintiff reported headaches three to five times per week, with symptoms of visual changes, leg weakness, dizziness, imbalance, and confusion. (Tr. 27, 741, 744). In mid-2019, Plaintiff reported continued migraines and seizures, with a seizure episode occurring every three to four months; Plaintiff felt comfortable with her current treatment regimen and felt that Aimovig was helping some with her headaches. (Tr. 27, 837). Similarly, in 2020, Plaintiff reported that, although she still had frequent headaches, the Aimovig helped some; she was continued on that and the abortive medications. (Tr. 27, 977, 980).

The ALJ explained that, although "[t]reatment records clearly document seizures and migraine headaches with associated symptoms," "examinations contemporaneous with her symptomology reveal no motor or sensory deficits, normal range of motion in the extremities, no neck pain, no dizziness and no weakness or numbness." (Tr. 28, 1192–1231). Additionally, other

treatment records indicate that Plaintiff's migraines and epilepsy were stable on medication. (Tr. 28, 1030–83). Further, although neurology records note three spells in which Plaintiff had difficulty moving her legs, they also note that medications were helping her headaches; that she was doing well with no significant seizures; and that she had relatively well-preserved sensation, fine coordination and gait, symmetrical reflexes, normal bulk and tone, and normal language and cognition. (Tr. 28, 977–1008).

Considering the medical evidence as well as Plaintiff's allegations, the ALJ supportably accommodated Plaintiff's physical impairments "by limiting her to medium work along with the postural and environmental limitations detailed in the [RFC]." (Tr. 28).

Regarding Plaintiff's ADHD, the ALJ noted that Plaintiff reported improved attention and energy with medication. (Tr. 28, 980). During the relevant period, exams showed normal mood and affect, intact judgment, intact memory, and intact cognitive functioning. (Tr. 28, 485, 488, 491, 671, 677, 746, 814, 849). Treatment notes indicate no cognitive deficits. (Tr. 29, 834–39). However, the ALJ partly credited Plaintiff's testimony that she continued to have difficulty maintaining concentration: he accounted for Plaintiff's ADHD "by limiting her to simple work as outlined in the [RFC]" and "by finding that she can tolerate occasional changes in the work setting and engage in occasional decision making." (Tr. 28).

More generally, the ALJ noted that, although Plaintiff testified to continued significant pain and limitations, exams generally were normal. (Tr. 28, 326, 334, 463, 485, 488, 492, 500, 671, 677, 746, 814, 822, 849, 876). Additionally, the ALJ noted that Plaintiff's most-recent treatment notes continued to reflect a disparity between her alleged limitations and the clinical findings. (Tr. 28, 1032, 1036).

In further consideration of Plaintiff's subjective complaints, the ALJ highlighted Plaintiff's "quite robust" activities of daily living. (Tr. 28). "For example, the claimant was treated for an ATV accident in 2019." (Tr. 28, citing 794–839). Plaintiff reported that she was driving an ATV without a helmet and took a turn too fast, such that the ATV tipped onto its side. (Tr. 29, 802). As the ALJ stated, driving an all-terrain vehicle "demands abilities inconsistent with the claimant's reported limitations. The treatment records noted that the claimant did not sustain any cognitive deficits from the ATV accident." (Tr. 28, citing Tr. 834–39). Further, "[o]ther reported activities of daily living included cycling, waterskiing, biking, hiking, tubing, essentially the ability to do whatever the claimant wanted to do [citing Tr. 522–667]. Again, these activities require demands inconsistent with the claimant's testimony of poor attention span and migraines causing dizziness." (Tr. 28).

Before evaluating the RFC assessments of the State-agency consultants (Tr. 29–30), which evaluation also factors into the ALJ's RFC analysis, the ALJ summarized his own RFC assessment as follows:

> In establishing the [RFC] I considered the above activities of daily living, diagnostic tests and physical examinations. Particularly influential in establishing the residual functional capacity are the robust activities of daily living. . . . I find the combined effects of all of the claimant's impairments, severe and nonsevere, . . . create synergies necessitating a more restrictive residual functional capacity than if considering the impairments individually. Based on the combined effects of all of the claimant's impairments I limited her to lifting 50 pounds occasional[ly and] 25 pounds frequently and sitting standing and walking six of eight hours each. Based primarily on the claimant's seizures and migraines I precluded all exposure to ropes, ladders, scaffolds, hazards and vibration. In concluding these functions I considered the location, duration, frequency and intensity of the claimant's impairments particularly her migraines. Treatment records note headaches/migraines with associated symptoms, [and] that the headaches occur frequently [citing Tr. 834–39, 977–1008, 1192–1231). Based on the claimant's knee impairments, which necessitated surgical intervention, the claimant was limited to occasional ramps, stairs, balancing, stooping, kneeling, crouching and crawling. Finally, with respect to the claimant's mental impairments, treatment records note that the claimant reported problems with

> focus and concentration [citing Tr. 977–1008]. Accordingly, I limited the
> claimant to performing simple routine repetitive work with occasional decision-
> making and changes in the work setting.

(Tr. 29). "As the ALJ clearly considered the relevant functions in relation to Plaintiffs' limitations, [there is] no error in the ALJ's compliance with SSR 96-8p." Owen, 2016 WL 4373702, at *4.

In sum, for the reasons stated, Plaintiff's first assignment of error is without merit.

**B. The ALJ's findings regarding Plaintiff's abilities to lift, carry, sit, stand, and walk.**

Plaintiff next argues that "the ALJ merely gave the broad finding that [she] could perform medium work, without any finding of the amount [she] can lift, carry, stand, walk, and sit." (Pl. Br. 4–5). Plaintiff is incorrect. The ALJ stated that he limited Plaintiff to lifting 50 pounds occasionally and 25 pounds frequently and sitting, standing, and walking six hours in an eight-hour day. (Tr. 29). Further, even if the ALJ had not so stated, it is implied in his citing 20 C.F.R. § 404.1567(c) (Tr. 25), which specifies the lifting and carrying requirements of medium work and "permits the Court to ascertain the sitting, standing, and walking limitations[.]" Martin v. Kijakazi, No. 1:20-cv-548, 2021 WL 4129233, at *4 (M.D.N.C. Sept. 9, 2021) (citations omitted), R&R adopted, No. 1:20-cv-548, 2021 WL 5999562 (M.D.N.C. Dec. 20, 2021).

For the reasons stated, this second assignment of error is overruled.

**C. Plaintiff's claim of inconsistency or ambiguity regarding the limitation to medium work.**

Finally, Plaintiff argues that the ALJ's decision is inconsistent because, in the RFC finding, he limited Plaintiff to medium work (Tr. 25) but, in his later analysis, he stated that "the combined effects of all of the claimant's impairments persuaded me the claimant is not capable

of performing medium work." (Tr. 30). However, there is no inconsistency or ambiguity. In the RFC finding, the ALJ limited Plaintiff to a reduced range of medium work and discussed the ways in which Plaintiff could do less than the full range of medium work. (Tr. 25). The ALJ also said that he "accommodated the claimant's physical impairments by limiting her to medium work along with the postural and environmental limitations detailed in the above [RFC]." (Tr. 28). Similarly, having found "that the record as a whole demonstrates that the claimant has more postural and environmental limitations than those assessed" by the State-agency medical consultants, the ALJ stated that, again, Plaintiff was not capable of performing the full range of medium work. (Tr. 30). Finally, in explaining his step-five finding, the ALJ likewise stated that, "although the claimant's additional limitations did not allow the claimant to perform the full range of medium work, . . . a finding of 'not disabled' is appropriate . . . ." (Tr. 31). In sum, this final assignment of error is overruled.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 7) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 10) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: May 6, 2022

Max O. Cogburn Jr.
United States District Judge